Next case is HOMESOURCE REAL ESTATE v. United States and BLB Resources in Ofori and Home Telos, 2011-5011. HOMESOURCE REAL ESTATE v. United States Homesource is here today because it is our belief that the lower court made error in finding that there was no standing and in finding that the record did not need to be supplemented and that the reason for that error is because the court failed to find that. Legally, the agency, HUD, had an obligation under FAR 8.4 and under the terms of the solicitation to actually obtain and make a comparison of the various offers, FSS, GSA schedules, to the terms of their proposals. In order to When you say the various offers, are you saying other than the one identified offer that's focused on the briefs? I don't remember whether this was Ofori Ofori Okay, that's not held confidential. I take it the name That's my own All right. There's so much confidentiality that I want to be careful I understand, Your Honor But the focus seemed to be on Ofori and you've broadened the focus in the way you've characterized it Well, our position, Your Honor, has been from the very beginning, even in the amended complaint, that we believe that the errors which were epitomized by Ofori as an example were so great that a rebid was necessitated and we were very clear in saying Well, we began to be Well, go ahead and perhaps you're going to address this And we were very clear in saying from the outset that the contracts as to all offers needed to be withdrawn because the agency had failed and by its own admission had failed to actually look at any of the FSS schedules for any of the offers. And the reason that that was significant is not only was it a requirement of the solicitation and a requirement under FAR 8.4, but it's also significant because the evaluative criteria involved the issue of looking at labor rates and labor categories. That's the way solicitation was structured. As a further example, evidentiary example of the impact of the violation was the fact that two other offerors, and again I assume I can say their names, Matt Martin and Home Telos, candidly admitted to the agency they didn't have labor categories and labor rates. And what's important about that is one of the questions asked of the agency in the Q&As was well, what if I don't have a schedule that conforms to what you're asking for in the way that the evaluation and pricing is to be done? And the agency came back and said, well, then you need to go to your GSA contracting officer and revise it. So when you have a foray who offers labor categories and labor rates, it doesn't have, and the agency never looked. You have Matt Martin and Home Telos who say candidly, we don't have labor rates and labor categories, although we know you're requiring us for purposes of the evaluation to disclose that to you. Then the agency has completely violated the evaluative criteria it has set out, and it has violated what's required under 8.4. MR. MERDOCK, I haven't heard the word standing, and that goes to the fact that the finding that your client wasn't in line to get the award because its technical evaluation was unacceptable. The standing element here is that there was a substantial chance for HomeSource to receive an award because a rebid was required, and where the rebid was required, they were an offeror, they did participate, they would have an opportunity to resubmit. So and we believe that we were very clear, as we said in both the amended complaint and in our subsequent briefs and in the argument to the court, we were very clear. We weren't arguing that a foray should be knocked out and we would be next in line for the contract. We were arguing a rebid was required, and the reason a rebid was required was because, as the record shows, out of 24 offerors, there were only 8 who actually received awards. So out of 8, a foray who didn't have the labor categories and labor rates that in its FSS schedule, and we believe the supplementation should have been made so that could be clearly demonstrated, Matt Martin and Home Tellos who said, well, we actually don't have what you're asking for as part of the evaluative criteria, more than 30 percent, almost half of the awardees really should have been in no better position and were desperately treated to their benefit by being permitted to be evaluated, receive good evaluations, and receive awards. Whereas HomeSource was downgraded and was differently evaluated because it supposedly failed to provide the necessary information with regard to pricing for purposes of the evaluation. What you ended up with was disparate treatment. If we don't agree with you that a rebid is necessary, then don't you have a standing problem? We would agree with that, Your Honor. There's no question. I mean, we started out at the very beginning saying we need a rebid, and we wouldn't have come forward to the court to argue that we would be next in line. We wouldn't be next in line. There's no—that's not the issue. We believe that the solicitation was so badly corrupted because, just as a matter even of common sense, but clearly, one of the things we found shocking was that the agency, in its arguments to the court, took the position, well, we didn't even really need to look at the FSS schedule. They didn't matter. That to us underscored the fact that the agency went into this solicitation not understanding and applying 8.4 and the requirement that it actually validate what was being offered and, more importantly, understanding why it was absolutely necessary that where you had offerors who said, well, we don't have part of the evaluative information, those offerors could not be allowed to then fabricate it, to then get better treatment than Home Source and many of the other offerors. So, now some of the awards—correct me if I'm wrong in this, but it's a little hard to keep track of all the awards and the bidders—but I take it that some of the awards were made to bidders who did not have the compliance problem that you pointed out with respect to 040, correct? Some of the successful bidders? That is correct, Your Honor. So those, at least, those particular bids would be off the table, I take it, since there's no standing issue with—not even any complaint issue with respect to that, correct? No, that's not our view, Your Honor. I know it's not your view, but why isn't it the correct view? It's not our view because it was a fundamental term of the solicitation that the agency actually made the comparison to make sure that offerors had what they were offering for the purpose of the evaluation. But if you have an offeror as to whom you don't have a complaint as to the way they handled their GSA labor elements, and they were regarded as technically acceptable and you were regarded as technically unacceptable for reasons having to do with factors other than price, I'm not sure how you can say with respect to those particular awards that you have a complaint. Well, here's the problem. The— Other than to say that this whole thing was so messed up from the beginning that we just have to start over a clean house and forget about the awards that were made with respect to specific sub-portions. There were five HSAs in which— Right. —in which we bid. Right. In each of those HSAs, between, I believe, two or three awards were made. Right. In most of those HSAs, there were no more than two, three to five who were considered to have been sort of for purposes of the agency in their consideration for getting offers. And in a number of instances, they were identified as having only fair ratings. And when you read the narrative report, what the agency said is, we are not going to make awards to anybody who's just fair. So when you take a four-year Matt Martin and home tellers out of the mix for some of those HSAs, you really don't have anybody left who would step in and get the next award. And in fact, because this was done as a narrative and there was not a numerical ranking of who's next in line, the only way it could be determined who would get the award next would be as if they went through the evaluative process again. And that's an important factor here, because as a number of the cases do say, if you don't have a numerical ranking when you're doing a best value, if there's a problem with the way the best value was done that eliminates one or more of the offers, you can't just go to the next one in line, because you didn't do a numerical ranking. So in this particular case, you've only got eight who received awards. You've got significant problems with three, because the agency did not comply with the requirements. In a number of the HSAs, the impact of that is that there would be none or maybe only one or two competitors left, and because there was no numerical ranking done, you'd really have to do a new evaluation to decide who would get it. In other words, you'd have to do a re-bid. Unless there's another question, I'd like to go to the supplementation issue. With regard to the supplementation issue as to OFORI, we went in and we were very candid in saying we argue that OFORI does not have labor categories and labor rates consistent with what's been offered. What the agency said is, well, we had them do a crosswalk. When you look at the crosswalk, the crosswalk, crosswalk, the titles in their offer to titles in their FSS schedule, it did not crosswalk the functions. The court said, well, I think that it's sufficient simply the crosswalk is sufficient. The cases indicate, and certainly we believe that the proper view is, that in order to make an evaluation as to whether or not the crosswalk is legitimate, you have to look at functionality. That's the whole point. It's not enough simply to compare titles. And so the only way to really resolve the issue, it's necessary for the court to do the evaluation, to actually look at the schedule. And part of what was shocking, again, was the agency took the position, well, you really don't need those, which again underscores that the agency went into the solicitation not understanding that part of its obligation under 8.4 was to ensure that for purposes of evaluation and offers, you had to have the labor categories and the labor rates in order to be able to be evaluated. And what they ended up doing was evaluating and giving better marks and awards to offerers who should have been rated unsatisfactory or non-responsive because they didn't have those labor categories and rates. Mr. Murdoch, your yellow light is on. You wanted to save some time for rebuttal? Yes, thank you, Your Honor. We'll stand for you. Mr. Ashman for the government. May it please the court, Your Honor. Your Honor, the government will yield five minutes to appellee intervener Home Tilos to address the court. Your timing reflects that. You've got ten minutes. Yes, Your Honor, we'll take ten minutes. As we explain in our brief, the trial court correctly ruled that Home Source does not have standing to challenge HUD's award decisions because appellant could not demonstrate a substantial chance of receiving an award absence of allegations of agency error in this procurement. The court stated in IBM versus the United States that a non-responsive bidder is the one who lacks a direct economic interest in an agency's contract award decision. I think Mr. Murdoch has conceded that point. So why don't you address the question about the re-bidding? Certainly, Your Honor. The Home Source's argument for a re-bid, they cite the court's case in Opressa. And there was a distinctly different situation in which the awardee was the only offerer who was determined to be technically acceptable. And therefore, if the award to the awardee in Opressa was determined to be erroneous and not lawful, there would have to be a re-bid because there were no more technically acceptable offers for the agency to consider. Here is distinctly different as the trial court found for each contract area that Home Source has challenged. There was a pool of technically acceptable offers that the agency could have chosen for award. With respect to each, again, it gets a little complicated because of the number of players and the number of entities. But with respect to each of the sub-sections of the entire award, is it the case that the right number of awardees, the number that the agency ultimately awarded, would have been accounted for even if by companies that did not have the problem that is complained of here? Even if you took Afori and the other two companies out of the mix? Do you understand the question? It's a complicated thing to formulate. Yes, Your Honor. A couple of responses. In our brief at page 15, we include a chart that, in our view, shows that there were, if you took away all the awardees, there were still a pool of technically acceptable offers that could be considered. Was that pool of uncontested and uncontestable awardees, was that as large as the number of awards for each of those areas that were made? Your Honor, they were larger for every award area except for 1P, in which two awards were made, and then there was two technically acceptable offers who were not chosen. So two that could have been chosen that weren't, two awards were made. Okay. So it was either equal or larger. Equal or larger, yes, Your Honor. And again, this goes to the question of the rebid. If the courts had determined that there was a mistake made involving the GSA, use of the GSA schedule, the agency needs an opportunity, should be afforded the first opportunity, to go back and correct that mistake. In this instance, it would be more reviewing the schedules in the manner that Home Source is arguing that should be done. So there, there is a pool, there's no challenge to, there's nothing wrong or corrupted with the proposals themselves. The allegation is how they were reviewed, and the agency needs that opportunity to redo that if the court determines there's an error. And the point of that is, it goes to the standing argument. Now, we don't know who would be selected in a re-evaluation, if one's to occur, but we know who would not be selected, and that's Home Source, because they were non-responsive, and they never challenged the technical and acceptability findings of the agency and the trial court. And it's stated in the record at page, or in our joint appendix at page 82.1, that the agency explicitly stated they would not select and offer her who failed to meet the minimum requirements of the solicitation. So we know what would happen in a re-solicitation.  And just a couple of points on the supply schedule, the merits of the supply schedule argument. We believe the trial court correctly concluded that the administrative record provides sufficient information to demonstrate a rational basis that a 4E's proposal is within the scope of a supply schedule contract. There's no question that a 4E held a valid Schedule 520. The solicitation did not further restrict offers by special item numbers or labor categories. They were afforded discretion in how to craft their solution for the asset management services. And the solicitation stood. It was never challenged that they needed to be more specific in that regard. So we feel that the administrative record provides a rational basis for the agency decision. And just one final point. One thing that seems to have been missed here is the requirement for harmful error. It's not enough for Home Source to allege that an evaluation or a step in the evaluation process wasn't done. They have to allege that they were harmed by it. And in this case, they have to show that someone actually was awarded a contract they shouldn't have. And the only person, the only offer they challenged below was a 4E. They made no other arguments regarding Home T. Lowe's, Matt Martin, or any other awardee. And that was their point. Well, that seems to have been disputed here because I understood your opposing counsel's argument to be that they indeed did challenge the others. Now you say no, only a 4A. No, Your Honor. If you look at what they, they raised three complaints in their amended complaint. A claim grounds for a relief. One alleging technical, the review of the technical proposal, and one alleging the past performance review, and one challenging a 4E schedule. Now the portions of their brief that they cited below, they challenged all of them. It was the sections of the brief that were summaries of the effect of all of their claims for relief, challenging all of the awards. But here, they're only on appeal challenging the supply schedule argument, and that was a 4E for areas 1A, 2P, and 3P. So we don't believe they properly challenged all areas. And I've run over my, a lot of time, Your Honor, so I'll yield to Home T. Lowe's unless there's any questions. We're happy to have you yield, but I thought you had three and a half minutes left. Oh, I misread the clock, Your Honor. You started with ten. There's no penalty for giving up time, but you do have a little more if you wish to use it. I think I've just about covered everything I wanted to. On the supplementation of the record issue, Your Honor, it's, our view was the, because of the sole requirement was that the offer had to be on the schedule 520, the record provided sufficient information to show the court and to show the agency that a 4E was performing the contract only with its schedule labor categories. So we believe that was the correct ruling. And unless there's any more questions from the court, the government would respectfully request the court affirm the trial court's decision in this case. Thank you, Mr. Ashman. Mr. Ward for Home T. Lowe's. Thank you, Your Honor. As may it please the court, my name is Alex Ward. I represent Home T. Lowe's, one of the interveners. I'd like to focus on the waiver question in particular because it has particular significance for my client. Judge Bryson, you asked whether it was properly raised below. The amended complaint and motion for judgment on the administrative record, MJAR, that Home Source submitted in the case did not raise the schedule issue with respect to my client, Home T. Lowe's. It raised it only with respect to 040. The amended complaint and the MJAR did raise other issues with respect to Home T. Lowe's, my client. But all of those issues they since have abandoned. The only issue that they're continuing to pursue is the schedule contract issue. That issue in the amended complaint and the MJAR did not apply to my client. And you can see that by looking at the amended complaint and the MJAR. It's in the joint appendix, pages 33 to 34, 35 to 36, and 44.5 to 44.6. If you look at those, you'll see exactly what was in the amended complaint and the MJAR and what was not. They also contend in their reply brief that they covered this in their, they raised the schedule contract issue with respect to my client in their response brief, their reply and response brief in the trial court. There are four problems with that, though. The first problem is that Home Source's amended complaint, as I just mentioned, did not include the schedule contract issue. And under this court's decision in Casa de Cambio, which we've cited, you can't raise an issue in your reply brief that you didn't have in your complaint. And none of the cases that Home Source has cited overturn that rule. They cite Ironclad as a case in which a waiver was not found when an argument had been raised, a new argument had been raised in a reply brief in the trial court. But in Ironclad, the key difference is that the issue in Ironclad had been in the plaintiff's amended, in their complaint. I don't think it was an amended complaint in that case, just their complaint. Here, the schedule contract issue with respect to my client, Home Telos, was not in the plaintiff's amended complaint. So Ironclad just doesn't apply under Casa de Cambio. The second problem is that even if Ironclad did apply, all that it says is that the trial court can choose to consider an issue raised for the first time in a reply brief if it would be unfair not to. Well, Home Source cannot show any unfairness here. And this court's decision in Becton-Dickinson, which is not in the briefs, but it's at 922 F. 2nd, 792, talks about what constitutes unfairness in this circumstance. And what they say is not unfairness is when a party has made a knowing tactical decision not to raise an issue in its opening brief. And that's exactly what happened here. This case, in this case, Home Source had a chance to file a TRO briefing in which they got a preview of the government's arguments. They received the amended complaint, they received the administrative record and only after that did they file their amended complaint. So they had a chance to amend their complaint. And then they filed their MJAR. So they had multiple chances to change their arguments. And in fact, they did change their arguments multiple times, but what they didn't do until their reply brief was include my client in the schedule contract issue. So it was clearly a tactical decision on their part and it would not be unfair to hold that they had waived the argument. They also are playing fast and loose with the nature of the argument. In the reply brief, they raised the schedule contract issue with respect to our prices but not with respect to the scope of the argument, the scope of the schedule contract. I'm running short on time so I'm going to skip over that. But they raised two different schedule contract issues and they didn't raise the scope argument with respect to my client. And the fourth problem is that they waived the issue again at oral argument.  they dropped it again at oral argument. At oral argument, under questioning by the court, they limited the schedule contract issue to OFORI again and not my client. I also want to just say quickly that the schedule contract issue, the merits of the schedule contract issue are just, they don't apply to my client even if you allow the, you forgive the waiver. My client does have the, my client's proposal did comply in all regards with its schedule contract and said that in its proposal and HUD acknowledged that point in the administrative record. The only other point that I'd like to make very briefly is that HomeSource has raised yet another issue in its reply brief in this court. For the first time, they say that we proposed fictitious hours and labor categories. That is an entirely new argument in their reply brief in this court. They waived it first because it's a pre-solicitation argument. It's a problem that they should have raised as soon as they saw the solicitation and they didn't. That was the nature of the solicitation called for pricing based on a percentage of a property sales price not on labor categories and prices. They didn't raise it there. They didn't raise it before the contract award so they waived it then. They didn't raise it at all in the trial court. They did, interestingly, HomeSource's counsel also represented another client in another protest of the same procurement. They raised it in that case. That's the pyramid case. They did not raise it in this case in the trial court proceedings in this case. You can see that discussion in the pyramid case at 95 federal claims at 135. Judge Hewitt addressed it in that case and disposed of it in that case but that's not this case so they didn't raise it in this case and then finally they also didn't raise it until their reply brief in this court so they waived it in that way as well. It also happens to be wrong. We complied with the solicitation. We proposed prices  with the structure called for in the solicitation. Mr. Ward, as noted,  for you to accept your argument. I apologize. Thank you, Your Honor. Mr. Murdoch has a little rebuttal time. Thank you, Your Honor. Just a few points. First of all, it was fundamentally important to the solicitation in the way it was described by the agency that in order for it to do the price evaluation it wanted to see       It wanted to see the labor mix and in parentheses it said e.g. labor categories and labor rates. It wanted to see the labor mix and in parentheses it wanted  the labor mix. Now, if you look at part 8.405-2D where it talks about doing best value it does talk about looking at the labor mix but it does not say anything requiring an examination of labor rates and the reason for that is because the best value analysis under 405-2D applies both to hourly services as well as to fixed price services so it anticipates that clearly you would not have labor rates if you were doing a fixed price sort of solicitation but it was the decision of the agency as they were allowed to do under 405-2D to include additional requirements and so the agency required and clearly compelled each of the respondents the offerers to provide labor rates and labor categories so it could carry out its best value evaluation it is not proper whether you limit it only to a 40 or whether you look at Mt. Martin or Home Telos for the agency to rely upon and doing the evaluation of price labor rates and labor categories that are not on your FSS you simply cannot do that that goes beyond the scope of your FSS and it is a violation and that we have tried to make clear is a fundamental problem here so while the agency has done its best value evaluation proper and went so far in the question and answers to say if you don't have it you better get it let me move to another point very quickly having to do with the issue of why a part 15 there is a provision that says that there has to be a disclosure if you are no longer in it but that is not true under 8.4 and there was nothing in the solicitation that said we are going to exclude you at some point you are no longer going to be eligible to be part of the solicitation so if there has to be a redo if they have to look at that pool that remains they can't just limit it to that because they didn't exclude nothing in the solicitation excluded anybody you are no longer eligible we are still eligible that is why they can't simply say there might have been a mistake we can go back and just look at the FSS for the ones we were willing to consider before final point with regard to the waiver I think when we said in our subsequent pleadings we believed all the contracts should be taken under advisement I think they were clearly on notice of that fact thank you very much thank you Mr. Murdoch case will take an under